# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **NATALE WILLIAMS,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **CIVIL ACTION** |
| ) | **NO. 23-40051-MRG** |
| ) | |
| **UMASS MEMORIAL HEALTH** ) | |
| **ALLIANCE-CLINTON** ) | |
| **HOSPITAL, INC.,** ) | |
| ) | |
| **Defendant.** ) | |

### MEMORANDUM AND ORDER ON DEFENDANT'S
### MOTION FOR JUDGMENT ON THE PLEADINGS
#### September 30, 2024

**GUZMAN, D.J.**

Natale Williams ("Plaintiff") a former employee of UMass Memorial HealthAlliance Clinton Hospital, Inc. ("Defendant" or "HealthAlliance"), asserts three claims following her termination for non-compliance with Defendant's COVID-19 vaccination policy. The claims include religious discrimination under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.*, and Chapter 151B of the Massachusetts General Laws (Count I), violation of equal protection and treatment rights (Count II), and violation of substantive and procedural due process rights (Count III). The case was removed to this Court pursuant to 28 U.S.C. § 1441. Defendant now moves for judgment on the pleadings on all three claims. For the reasons that follow, Defendant's motion is **granted in part and denied in part**.

I.      Factual Background

        The Court draws the following factual allegations from the complaint and accepts them as true for the purpose of resolving the motion. Natale Williams worked as a Registered Nurse at Defendant HealthAlliance from August 15, 2005, until her termination. HealthAlliance is part of the UMass Memorial Health Care System, a Massachusetts corporation headquartered in Leominster, Massachusetts.

        In early 2020, a highly contagious novel coronavirus began spreading across the globe which ultimately became known as "COVID-19."[1] By March 2020, the pandemic had effectively shut down the country as the President and Governors of all 50 states declared States of Emergency. See, e.g., Declaring a National Emergency Concerning the Novel Coronavirus Disease (COVID–19) Outbreak, 85 Fed. Reg. 15337 (Mar. 18, 2020). One of the primary goals of these actions was to prevent hospitals from being overwhelmed from a potential surge in COVID-19 cases. See Desrosiers v. Governor, 158 N.E.3d 827, 833 (Mass. 2020) (discussing the reasons and purposes of Governor Baker's COVID-19 emergency order). By the end of 2020, 10,000 people in Massachusetts and a million people worldwide were killed by COVID-19. Id. at 837. That number has since increased dramatically, as 1,188,278 Americans alone have been killed by COVID-19. (Ctr. For Disease Control and Prevention COVID Data Tracker, https://covid.cdc.gov/covid-datatracker/#maps_deaths-total (last visited Apr. 15, 2024)).

        As soon as the pandemic started, efforts began to develop a viable vaccination against the novel coronavirus that causes COVID-19 disease. (U.S. Gov't Accountability Off., GAO-21-319, Operation Warp Speed: Accelerated COVID-19 Vaccine Development Status and Efforts to

_____

[1] The Court takes judicial notice of the following facts, the accuracy of which cannot be reasonably questioned.

Address Manufacturing Challenges (2021) ("By the end of March 2020, with the initiation of the first clinical trials, the race was on in the United States to develop a vaccine.")). Dubbed "Operation Warp Speed" by the President, this effort to develop viable vaccines for the market culminated with three vaccines, which were granted emergency use authorization by February 27, 2021. (Authorization for Emergency use of Certain Biological Products During the COVID-19 Pandemic; Availability, 86 Fed. Reg. 28608 (effective Feb. 9, 2021) (granting the Johnson and Johnson vaccine emergency use authorization on Feb. 27, 2021, making it the third vaccine after the Moderna and Pfizer-BioNTech vaccinations were granted emergency use authorization in December 2020)). The CDC estimates that about 80% of adults in the United States have received at least one COVID-19 vaccination. (Ctr. For Disease Control and Prevention COVID-19 Vaccination Coverage and Vaccine Confidence Among Adults, https://www.cdc.gov/vaccines/imz-managers/coverage/covidvaxview/interactive/adults.html (last visited Apr. 15, 2024)). "[T]he [COVID-19] vaccines are a safe and effective way to prevent the spread of [the virus]." Mass. Corr. Officers Federated Union v. Baker, 567 F. Supp. 3d 315, 327 (D. Mass 2021).

On September 15, 2021, HealthAlliance announced a COVID-19 Vaccination Policy requiring all hospital employees to receive the first vaccine dose by November 1, 2021, and the second by December 15, 2021, as a condition of continued employment. The policy provided a process for requesting religious and medical exemptions. Employees who were not vaccinated by December 15, 2021 were subject to termination.

On October 4, 2021, Plaintiff submitted a request for a religious exemption, which stated:

"I pray to God daily and ask Him to give me support, be compassionate to me, and help me to use my heart and hands to help heal the sick. I pray for direction to help me do what is right. Taking this shot, or administering or educating others on a new product I do not believe in, goes against my sincerely held religious beliefs and my conscience. I would be

sinning in the eyes of the Lord, jeopardizing my relationship with Him. It violates my conscience—right versus wrong, or lying. Encouraging someone to do something I would not do, I believe, is unethical. We strive to live by morals and ethics, we should strive to do what is just, based on our own convictions. We should all have a choice based on our own beliefs, facts, and data. I have held this belief and conviction since I was a child.

My research, wisdom, guidance from the Lord, and many trusted medical professionals along with using discretion in making wise decisions for myself, has led me to refuse this gene therapy injection. Jesus has prayed for guidance. I stand firm in my beliefs. Jesus said the Holy Spirit will guide each person in the truth, who has him.

I have taken the flu shot only, and not every year because I do not feel it is necessary. My belief is that this is not a vaccine. This new technology is not safe or effective as seen by the data gathered over the last 9 months. My faith has led me to use discretion and make wise decisions. God gave me a brain to use that the above responses are true and accurate. I will provide additional information if requested to determine my eligibility for a religious exemption. My prayers have guided me. My conscience tells me to do what's right and just."[2]

This request was denied by Defendant on October 22, 2021, and Plaintiff was subsequently terminated.

II.     <u>Procedural Background</u>

Following her termination, Plaintiff filed a timely charge with the United States Equal Opportunity Commission (EEOC), who issued her a right-to-sue notice on August 31, 2022. Subsequently, Plaintiff filed this action on November 29, 2022 in Worcester Superior Court, within the 90-day period required after receiving the EEOC notice.

---

[2] The Court relies on Exhibit C of Plaintiff's Opposition to Defendant's Motion for Judgment on the Pleadings [ECF No. 20-3 at 2-3], which includes the language from Plaintiff's exemption request. This language is central to Plaintiff's alleged sincerely held religious beliefs [*Amended Complaint* ¶ 9] and is sufficiently referenced in the Complaint [<u>Id.</u> ¶ 7]. In line with <u>Watterson v. Page</u>, 987 F.2d 1, 3 (1st Cir. 1993), the Court can include external documents in its review—specifically documents of undisputed authenticity, official public records, documents central to the plaintiff's claim, and those sufficiently referenced in the complaint—without converting the motion into one for summary judgment. Although <u>Watterson</u> pertains to a motion to dismiss, the Court applies the same standard here since "[t]he standard of review of a motion for judgment on the pleadings under Fed. R. Civ. P. 12(c) is the same as that for a motion to dismiss under Rule 12(b)(6)." <u>Marrero-Gutierrez v. Molina</u>, 491 F.3d 1, 5 (1st Cir. 2007).

Plaintiff's initial Complaint alleged six claims: (1) detrimental reliance/promissory estoppel, (2) intentional misrepresentation/deceit, (3) negligence, (4) tortious interference with a business relationship, (5) intentional infliction of emotional distress, and (6) assault. HealthAlliance responded by moving to dismiss the Complaint for failure to state a claim.

Plaintiff subsequently filed an Amended Complaint, dropping the initial claims and introducing new ones: religious discrimination in violation of Title VII of the Civil Rights Act and Chapter 151B of the Massachusetts General Laws (Count I), violation of equal protection and treatment rights (Count II), and violation of substantive and procedural due process rights (Count III). HealthAlliance removed the case to federal court based on federal question jurisdiction and filed an answer to the Amended Complaint on May 15, 2023. HealthAlliance now moves for judgment on the pleadings with respect to all three federal claims.

III.   Standard of Review

"The standard of review of a motion for judgment on the pleadings under Fed. R. Civ. P. 12(c) is the same as that for a motion to dismiss under Rule 12(b)(6)." Marrero-Gutierrez, 491 F.3d at 5. "[U]nlike a Rule 12(b)(6) motion, [a Rule 12(c)] motion implicates the pleadings as a whole." Kimmel & Silverman, P.C. v. Porro, 969 F. Supp. 2d 46, 29 (D. Mass. 2013). During this review, "the court must view the facts contained in the pleadings in the light most favorable to the nonmovant and draw all reasonable inferences" in their favor. Perez-Acevedo v. Rivero-Cubano, 520 F.3d 26, 29 (1st Cir. 2008). Dismissal is only appropriate at this stage if the pleadings, viewed in the light most favorable to the non-moving party, fail to support a "plausible entitlement to relief." Rodriguez-Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 95 (1st Cir. 2007).

A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. In order for the complaint to survive, it must state a claim that "rais[es] a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). In reviewing a 12(c) motion, the court must "separate the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)." Guadalupe-Báez v. Pesquera, 819 F.3d 509, 514 (1st Cir. 2016) (citation omitted). When an affirmative defense is "definitively ascertainable from the complaint and other allowable sources" and the facts are "suffic[ient] to establish the affirmative defense with certitude," the Court can grant the Rule 12(c) motion on that defense. Gray v. Evercore Restructuring L.L.C., 544 F.3d 320, 324 (1st Cir. 2008). On a 12(c) motion, the Court may not "resolve contested facts," and "[o]nly if those properly considered facts 'conclusively establish the movant's point' is the motion for judgment on the pleadings granted." Children's Hosp. Corp. v. Cakir, 183 F. Supp. 3d 242, 244 (D. Mass. 2016) (quoting R.G. Fin. Corp. v. Vergara-Nuñez, 446 F.3d 178, 182 (1st Cir. 2006)).

IV.    Discussion

       Count I – Claims for Religious Discrimination

       In Count I, Plaintiff alleges that Defendant violated both federal and Massachusetts laws prohibiting religious discrimination in violation of Title VII, 42 U.S.C. § 2000e et seq., and M.G.L. c. 151B, §4. Specifically, Plaintiff contends that her termination for refusing the COVID-19 vaccination constitutes religious discrimination and argues that Defendant neither recognized her sincerely held religious beliefs nor offered any accommodation. Given that the analysis of the Massachusetts state law claim mirrors that of federal law, the Court will address both claims under

the same framework. See Cloutier v. Costco Wholesale Corp., 390 F.3d 126, 131-32 (1st Cir. 2004); Brown v. F.L. Roberts & Co., Inc., 452 Mass. 674, 676-77 (2008).

To make out a claim of religious discrimination under the statutes, the plaintiffs "must first show 'that a bona fide religious practice conflicts with an employment requirement and was the reason for the adverse employment action.'" Bazinet v. Beth Israel Lahey Health, --- F.4th ---, 2024 WL3770708, at *4 (1st Cir. 2024) (quoting Lowe v. Mills, 68 F.4th 706, 719 (1st Cir. 2023)). If the Plaintiff make that showing, the burden shifts to Defendant "to show that it 'offered a reasonable accommodation or, if it did not offer an accommodation, that doing so would have resulted in undue hardship.'" Id. (quoting Lowe, 68 F.4th at 719).

It is improper at this stage for the Court to inquire into the sincerity of religious beliefs, as that question implicates the credibility of the Plaintiffs and is highly fact-dependent. EEOC v. Union Independiente De La Authoridad De Acueductos Y Alcantarillados De P.R., 279 F.3d 49, 56 (1st Cir. 2002) ("credibility issues such as the sincerity of an employee's religious belief are quintessential fact questions. As such, they ordinarily should be reserved 'for the factfinder at trial, not for the court [at the pleadings stage].'"). Despite that limitation, "[t]o qualify as a bona fide religious practice, a plaintiff must show 'both that the belief or practice is religious and that it is sincerely held.'" Antredu v. Mass. Dep't of Youth Servs., 2024 WL 1539725 (D.Mass. Apr. 9, 2024) (quoting Union Independiente).

In this case, the Court presumes Plaintiff's beliefs are sincerely held and Defendant does not suggest otherwise. Defendant contends that the Amended Complaint fails to plausibly allege that Plaintiff's belief or practice derives from a religious belief. These beliefs, which allegedly prevented her compliance with Defendant's vaccination policy, resulted directly in her termination

– an adverse employment action. The central issue then is whether Plaintiff has sufficiently alleged that these beliefs are religious rather than merely personal.

In her exemption request, Plaintiff refers to her "sincerely held religious beliefs" as the basis for refusing the vaccine. Her justification, Plaintiff alleges, is rooted in ""research, wisdom, and guidance" from prayer and spiritual introspection. In addition, Plaintiff's admission in the exemption request that she has received flu shots, coupled with her expressed doubts about the COVID-19 vaccine's safety and efficacy, suggest that her objections are personal rather than religious. However, Plaintiff alleges that "I pray to God daily and ask Him to give me support […] and "[m]y research, wisdom, guidance from the Lord … has led me to refuse this gene therapy injection." She further alleges that taking the COVID-19 shot would be "sinning in the eyes of the Lord." While Defendant contends that Plaintiff's refusal to take the vaccine is a personal not religious choice, that

Accordingly, in line with precedent from this district and governing case law, Plaintiff has sufficiently alleged a claim of religious discrimination and the motion for judgment on the pleadings is denied as to Count I. See Bazinet v. Beth Israel Lahey Health, Inc., 113 F.4th 9, 15 (1st Cir. 2024) (whether employee's objection to vaccine was based on sincerely held religious belief cannot be resolved at the dismissal stage); Munroe v. Boston Medical Center, 2024 WL 4203238, *7, (D.Mass. Sept. 16, 2024); Catherine Morrill v. Beth Israel Deaconess Lahey, 1:24-CV-11041-LTS, (D.Mass. Sept. 17, 2024); Natalia Usmanov et al v. Massachusetts Financial Services Co., 1:23-CV-11631-JEK (D.Mass. Sept. 3, 2024).

Count I – Defendant's Undue Hardship Defense

Defendant argues that if Plaintiff's claims should fail because exempting her from the COVID-19 vaccination requirement would have constituted an undue hardship. Undue hardship

in a Title VII religious discrimination case is an affirmative defense. Lowe, 68 F.4th at 719. "The undue hardship defense is built into the statutory definition of 'religion,' see 42 U.S.C. § 2000e(j), such that an employment action cannot constitute discrimination on the basis of religion, and an employer cannot be liable under Title VII for religious discrimination, if the undue hardship defense applies." Lowe, 68 F.4th at 724. Undue hardship under Title VII requires employers "to accommodate, within reasonable limits, the bona fide religious beliefs and practices of employees." Sánchez-Rodríguez, 673 F.3d at 12 (quoting Unión Independiente, 279 F.3d at 55). As the Supreme Court recently clarified in Groff v. DeJoy, 600 U.S. 447 (2023), an accommodation poses undue hardship "when [the] burden is substantial in the overall context of an employer's business." Id. at 468. In determining whether a burden is substantial, a court must consider "all relevant factors in the case at hand, including the particular accommodations at issue, and their practical impact in light of the nature, size and operating cost of [an] employer." Id. at 470-471 (internal quotation marks and citations omitted).

Because Defendant provides medical care to patients, including patients with serious and life-threatening conditions, and as a Registered Nurse, Plaintiff worked directly, in person, with Defendant's patients. Defendant contends that allowing Plaintiff to continue interacting with patients while remaining unvaccinated indisputably would have created a higher risk of COVID-19 transmission within HealthAlliance, putting its patients, staff and the public at risk of infection. Plaintiff responds that she worked for two years directly with patients under the challenging circumstances of the COVID-19 pandemic, and argues that it would not now be an undue hardship for Defendant to accommodate her going forward.

Dismissal under Rule 12(b)(6) on undue hardship grounds is appropriate only "if the facts establishing the defense are clear on the face of the plaintiffs' pleadings and there is no doubt that

the plaintiffs' claims are barred." <u>Bazinet</u>, 113 F.4th at 18-19, quoting <u>Lowe</u>, 68 F.4th at 719. Generally, however, it will not be possible to adjudicate the undue hardship defense at the pleading stage because the Groff test is "fact specific." <u>Id.</u>, citing <u>Groff</u>, 600 U.S. at 468. Like Plaintiff's religious discrimination claim, the issue of whether Defendant would suffer undue hardship by granting religious accommodation involves the development of more facts on the record that cannot be resolved at this stage. <u>Accord</u>, <u>Bezinet</u>, 113 F. 4th at 19.

<u>Counts II and III – Federal and State Constitutional Claims</u>

Counts II and III of the amended complaint allege that Defendant violated Plaintiff's equal protection and due process rights by terminating her employment after refusing her request for an exemption from its COVID-19 vaccine policy. Violations of the United States Constitution require a showing that "the alleged deprivation was committed by a person acting under color of state law." <u>West v. Atkins</u>, 487 U.S. 42, 48 (1988), which  are asserted pursuant to 42 U.S.C. § 1983.. The actions of private individuals may fall within the scope of the Constitution when they can be fairly attributed to the state. <u>Cruz-Arce v. Mgmt. Admin. Servs. Corp.</u>, 19 F.4th 538, 543 (1st Cir. 2021). The First Circuit Court of Appeals recently described three general ways in which private conduct may be considered state action:

> First, a private party may be considered a state actor if it assumes a public function which, by tradition, is exclusively reserved to the state (the public function test) .... Second, a private party may be considered a state actor if its conduct is coerced or significantly encouraged by the state (the state compulsion test) .... Third, a private party may be considered a state actor if it and the state have entered into so symbiotic a relationship that they have become joint participants in the challenged conduct (the nexus/joint action test).

<u>Id.</u> at 544.

"To make out a section 1983 claim, a plaintiff must allege facts sufficient to show that the defendants acted under color of state law and caused the deprivation of federal rights." *Id*. Section 1983 "does not apply to 'merely private conduct, no matter how discriminatory or

wrongful.'" Grapentine v. Pawtucket Credit Union, 755 F.3d 29, 31 (1st Cir. 2014) (quoting Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 50 (1999)). Here, the Amended Complaint does not allege that Defendant acted under color of state law or that its conduct was "'fairly attributable to the State'" when it terminated the Plaintiff's employment. Cruz-Arce, 19 F.4th at 543, nor does Plaintiff cite to any statutory basis for her claims. McEntee v. Beth Israel Lahey Health, Inc., 2023 WL 4907617, *3 (D.Mass. Aug. 1, 2023). "It is 'only in rare circumstances' that private parties can be viewed as state actors." Bush v. Wang Center for Performing Arts, Inc., 2022 WL 17812937 (D.Mass. Oct. 31, 2022).

Plaintiff's Amended Complaint identifies UMass Memorial HealthAlliance-Clinton Hospital as a "duly organized Massachusetts corporation" and does not allege any facts in her Amended Complaint that refers to Defendant as a state actor. It also does not claim that Defendant's allegedly discriminatory actions were state-directed, state-coerced, or conducted in partnership with the state. Importantly, the Amended Complaint omits a crucial element by not asserting a claim under 42 U.S.C. § 1983, which is necessary to pursue a direct cause of action under the United States Constitution for violations of constitutional rights. Arpin v. Santa Clara Valley Transp. Agency, 261 F.3d 912, 925 (9th Cir. 2001) ("[A] litigant complaining of a violation of a constitutional right does not have a direct cause of action under the United States Constitution but must utilize 42 U.S.C. § 1983."). Instead, Plaintiff alleges that Defendant violated Plaintiff's rights under the Equal Protection and Due Process Clauses of the Fourteenth Amendment.

In her opposition memorandum, Plaintiff argues that Defendant is a state actor and argues in the alternative that even if Defendant is not a state actor, it conducted itself as one. These assertions were not included in the original or the Amended Complaint, however, which further justifies dismissal of Counts II and III. McEntee, 685 F. Supp. 3d 43 (quoting Estades-Negroni v.

<u>CPC Hosp. San Juan Capestrano</u>, 412 F.3d 1, 4 (1st Cir. 2005). For purposes of completeness, however, the Court will briefly address these arguments presented in Plaintiff's opposition.[3]

Plaintiff contends that Defendant should be considered a state actor, citing its affiliation with the University of Massachusetts ("UMass"), a public university. She points out that UMass Memorial Health Care, Inc., the parent company of Defendant, supports UMass Medical School, who acted under the guidance of the Massachusetts Department of Public Health during the COVID-19 crisis. Therefore Plaintiff argues, Defendant, as part of this network, qualifies as a state actor. This claim faces two significant challenges. First, it contradicts the language in both the Amended Complaint and the opposition itself, where Defendant is described as a "duly organized Massachusetts corporation" and later acknowledged by Plaintiff as a "private entity." Second, the mere association of a private, non-profit corporation with a public university does not automatically confer state actor status under the legal definition of "acting under color of state law." <u>See</u> <u>West</u>, 487 U.S. at 48. Instead, as discussed below, the determination of state actor status

---

[3] The Court also denies Plaintiff's following request: "Should the Court dismiss the Williams's Complaint, the Plaintiff respectfully requests leave to file a Second Amended Complaint to add/clarify a claim under 42 U.S.C. § 1983" raised in her opposition. No proposed amendment was filed, and thus it holds no legal weight. <u>See</u> <u>Wayne Invest., Inc. v. Gulf Oil Corp.</u>, 739 F.2d 11, 15 (1st Cir.1984) (finding that plaintiff's indication of a potential future request to amend if the court dismissed its complaint, which the plaintiff made in its memorandum in opposition to the defendant's motion to dismiss, did not "[constitute] a motion to amend the complaint sufficient to preserve the issue for appeal"). Although there are rare cases where a mere request might be treated as a formal motion to amend, no such circumstances exist here. <u>See</u> <u>Gray v. Evercore Restructuring L.L.C.</u>, 544 F.3d 320, 327-28 (1st Cir. 2008). Even if the Court had considered the Plaintiff's statement in her memorandum as an actual motion, denying it falls well within the Court's discretion. <u>See id.</u> The Court's subsequent analysis shows that any additional amendment would be futile because Plaintiff has not introduced any new facts suggesting that HealthAlliance acted as a state actor. <u>See</u> <u>Correa–Martinez v. Arrillaga–Belendez</u>, *328 903 F.2d 49, 59 (1st Cir.1990) (finding district court did not abuse discretion in denying leave to amend where "nothing [could] repair the holes in [the plaintiff's] case"); <u>see also</u> <u>ACA Fin. Guar. Corp. v. Advest Inc.</u>, 512 F.3d 46, 55–56 (1st Cir. 1990) ("We defer to the district court's decision if any adequate reason for the denial is apparent on the record.") (internal quotations and citation omitted).

for a private actor involves specific tests such as the state compulsion test, the nexus/joint action test, and the public function test. Accordingly, this argument fails to classify Defendant on its face as a state actor.

Plaintiff also argues that Defendant's COVID-19 vaccine mandate constitutes state action under the three First Circuit theories, however none of these arguments are compelling. Plaintiff incorrectly claims under the compulsion and nexus tests that "the Commonwealth of Massachusetts and Defendant are so intertwined that they are joint participants in the wrongdoings claimed by Plaintiff." This assertion actually pertains to the nexus test. Plaintiff simply reiterates the elements of the claim without substantive evidence. See Cruz-Arce, 19 F.4th at 543 (1st Cir. 2021) ("[A] private party may be considered a state actor if it and the state have entered into so symbiotic a relationship that they have become joint participants in the challenged conduct (the nexus/joint action test).").

Finally, Plaintiff alleges that Defendant was coerced into enforcing the federal vaccine mandate to secure federal funding, specifically Medicare and Medicaid. The mere receipt of federal funds however does not suffice to transform a private entity into a state actor. See Rockwell v. Cape Cod Hosp., 26 F.3d 254, 258 (1st Cir. 1994); McEntee v. Beth Israel Lahey Health, Inc., 685 F. Supp. 3d 43 (D.Mass. 2023)[4] (finding receipt of federal funds such as Medicare and Medicaid insufficient to establish private hospital as state actor).

---

[4] The Court recognizes Plaintiff's observation that the Title VII and Chapter 151(b) claims were not dismissed under McEntee, 685 F. Supp. 3d 43. However, this case is cited solely as precedent for dismissing Plaintiff's constitutional claims, consistent with the judgments rendered in McEntee. Concerning the dispute over counsel's involvement in Bush v. Wang Center for Performing Arts, Inc., 2022 WL 17812937 (D.Mass. Oct. 31, 2022), the Court finds this matter irrelevant to the present case.

Accordingly, because Plaintiff fails to allege plausible facts to establish that Defendant is a state actor, the motion for judgment on the pleadings is granted as to Counts II and III.

## V.      CONCLUSION

For the foregoing reasons, the motion for judgment on the pleadings as to all three counts is **GRANTED** as to Counts II and III and **DENIED** as to Count I.


**SO ORDERED.**

Dated: September 30, 2024

 /s/ Margaret R. Guzman     
Margaret R. Guzman
United States District Judge

14